FLORENCE PATCH, Indiv. and as Adm'r of the Estate of William C. Patch, Sr., Deceased, Plaintiff-Appellant, v. THE TOWNSHIP OF PERSI-FER, Defendant-Appellee.

Third District   No. 3—90—0506

Opinion filed May 3, 1991.—Rehearing denied July 3, 1991.

Duane Thompson, of Braud/Warner, Ltd., of Rock Island (Michael J. Warner, of counsel), for appellant.

Robert C. Stoerzbach, of Barash, Stoerzbach & Henson, of Galesburg (John W. Robertson, of counsel), for appellee.

JUSTICE HAASE delivered the opinion of the court:

William Patch, Sr., died as a result of a collision between his motor vehicle and a Santa Fe Railroad train. Florence Patch, the decedent's wife, brought suit against Persifer Township to recover damages for the wrongful death of her husband. In response, the defendant, Persifer Township, filed a motion for summary judgment. In support of its motion, the defendant attached the depositions of several persons. Likewise, the plaintiff attached various exhibits to her response. After a review of the pleadings and evidence presented, the trial court granted the defendant's motion. The court ruled the plaintiff failed to present any factual basis that could arguably entitle her to a judgment under applicable Illinois law. The court based its decision, in part, on statutory grants of immunity contained in the Local Governmental and Governmental Employees Tort Immunity Act (Ill. Rev. Stat. 1989, ch. 85, par. 1—101 *et seq.*). The plaintiff appeals. We affirm.

The underlying facts of this case for the purpose of this appeal are not in dispute. On January 30, 1987, William Patch, Sr., was driving his car on a rural gravel road in Knox County. As he was travelling towards the railroad tracks that intersected the roadway, his vehicle deceased speed to about 20 miles per hour and began "fishtailing." Mr. Patch's car slid onto the railroad tracks and was hit by a Santa Fe Railroad train. Mr. Patch was killed as a result of the impact.

The depositions of William Patch, Jr., the decedent's son, Merrill Collopy, the township road commissioner, and D.F. Dodge, the engineer of the train, were all attached to the defendant's motion for summary judgment. All agreed that the road was icy and no cinders or salt had been placed on the intersection that day. Collopy testified that he travelled the roads of the township looking for slick spots to cinder, but that he had not cindered the approach to the crossing for three days before the accident. No signs had been placed on the roadway warning of its slippery condition. In addition, it is agreed there were humps in the road caused by ice and snow being pushed up by other vehicles travelling the same road as the decedent. This gave the road a distinct "washboard" effect.

The plaintiff stated several theories of recovery: (1) the road's "washboard" effect was a result of a defect in the roadway and created a hazardous condition that was the proximate cause of the decedent's death; (2) the township breached its duty to reasonably maintain the roadway by failing to place cinders or salt on the rail

crossing; (3) if the defendant did not have a duty to maintain the rail crossing by spreading salt or cinders, a duty to do so arose from the defendant's prior voluntary acts of spreading abrasive material on the roadway; and (4) the defendant breached its duty to warn motorists of the dangerous condition of the crossing by not posting a warning sign at the rail crossing.

The issue presented on appeal is whether the trial court erred in granting summary judgment in favor of the defendant.

■■ Summary judgment is only appropriate "if the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." (Ill. Rev. Stat. 1989, ch. 110, par. 2—1005(c).) In ruling on a motion for summary judgment, it is important to note that the aim of summary judgment is not to try issues, but to determine whether any triable issues exist. (*Allen v. Meyer* (1958), 14 Ill. 2d 284, 152 N.E. 576.) This means that while the plaintiff need not prove her case prior to trial, she is required to present some factual basis that would arguably entitle her to a judgment under applicable Illinois law. *Chisolm v. Stephens* (1977), 47 Ill. App. 3d 999, 386 N.E.2d 495.

■■ Plaintiff first contends the defendant was negligent in maintaining the roadway in question. The plaintiff presented no sworn testimony or affidavits to the trial court, however, that could support such a finding. The sworn testimony presented indicated the road in question had a "washboard" effect caused by other vehicles traveling the same route as the decedent. The evidence also indicated the uneven state of the roadway was common to all gravel roads in the area during the winter months. There was no evidence to support an allegation of a defect in the road and thus the trial court properly found no material issue of fact presented for trial.

■■ Next, plaintiff contends Persifer Township breached its duty to reasonably maintain the roadway by failing to place cinders or salt on the rail crossing. Section 3—105(a) of the Tort Immunity Act (Ill. Rev. Stat. 1989, ch. 85, par. 3—105(a)) provides that local public entities are immune from suit for any injury caused by the effect of weather conditions on "streets, highways, alleys, sidewalks, or other public ways." We fail to see how a governmental body can be immune from suit for the effects of weather conditions on public ways, and yet be held liable in tort for failing to spread salt on an icy road. Nothing has been presented to the trial court or this court to show that a municipality has a duty to spread salt on an icy road.

In the alternative, plaintiff contends that even if the defendant did not have a duty to spread salt or sand on the rail crossing, a duty to do so arose from the defendant's prior voluntary acts of spreading abrasive material on the roadway. If we were to accept plaintiff's theory of assumed duty, governmental bodies could be assured of retaining their statutory grant of immunity under section 3—105(a) of the Tort Immunity Act only if they ceased snow removal and other such activities. Surely this is not what the legislature intended. Case law holds that no duty arises merely from prior voluntary acts. *Lansing v. County of McLean* (1978), 69 Ill. 2d 562, 372 N.E.2d 822.

■■ Finally, plaintiff claims the defendant breached its duty to warn the decedent of the icy condition of the roadway by not posting warning signs at the rail crossing. Section 3—104 of the Tort Immunity Act (Ill. Rev. Stat. 1989, ch. 85, par. 3—104) provides that local public entities are immune from suit for any injury "caused by the failure to initially provide regulatory traffic control devices *** or any other traffic regulating or warning sign." Again, the plain language of the Tort Immunity Act specifically prevents the plaintiff from stating a cause of action under Illinois law. See also *Lansing v. County of McLean* (1978), 69 Ill. 2d 562, 372 N.E.2d 822.

The trial court ruled the plaintiff failed to present any factual basis that could arguably entitle her to a judgment under Illinois law. We agree. The plaintiff presented no affidavits or sworn testimony to the trial court that could support a finding that the roadway in question was defective, negligently maintained, or the proximate cause of the accident.

Accordingly, the judgment of the circuit court of Knox County is affirmed.

Affirmed.

GORMAN and STOUDER, JJ., concur.